09-2979-cr; 09-3267-cr
United States v. Robert Rawls, Christopher Lamont Sherman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to summary orders filed after January 1, 2007, is permitted and is governed by this Court's Local Rule 32.1 and Federal Rule of Appellate Procedure 32.1. In a brief or other paper in which a litigant cites a summary order, in each paragraph in which a citation appears, at least one citation must either be to the Federal Appendix or be accompanied by the notation: "(summary order)." A party citing a summary order must serve a copy of that summary order together with the paper in which the summary order is cited on any party not represented by counsel unless the summary order is available in an electronic database which is publicly accessible without payment of fee (such as the database available at http://www.ca2.uscourts.gov/). If no copy is served by reason of the availability of the order on such a database, the citation must include reference to that database and the docket number of the case in which the order was entered.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of September, two thousand ten.

PRESENT:

> HON. DEBRA ANN LIVINGSTON,
> HON. GERARD E. LYNCH,
> > *Circuit Judges*,
> HON. WILLIAM K. SESSIONS III
> > *District Judge.*[*]

---

UNITED STATES OF AMERICA
> *Appellee*,

-v.-                                                  Nos.    09-2979-cr
                                                               09-3267-cr

ROBERT RAWLS,
CHRISTOPHER LAMONT SHERMAN,
> *Defendants-Appellants*.

---

[*] The Honorable William K. Sessions III, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

ROBERT C. MIRTO, Law Offices of Steven B. Rasile, West Haven, Connecticut, for *Defendant-Appellant Robert Rawls.*

ARZA FELDMAN, Feldman and Feldman, Uniondale, New York for *Defendant-Appellant Christopher Lamont Sherman*

WILLIAM M. BROWN, JR., Assistant United States Attorney (Robert M. Spector, Assistant United States Attorney, *on the brief*) *for* David B. Fein, United States Attorney for the District of Connecticut, New Haven, Connecticut, for *Appellees.*

Appeal from the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*.)

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgments of convictions and sentences imposed on July 6, 2009 with respect to defendant-appellant Sherman and July 10, 2009 with respect to defendant-appellant Rawls are AFFIRMED.

Defendants Christopher Lamont Sherman and Robert Rawls appeal from judgments of conviction entered on July 6, 2009 and July 10, 2009 respectively following a jury trial in the District of Connecticut convicting them of one count of conspiracy to distribute 50 grams or more of cocaine base. *See* 21 U.S.C. §§ 846, 841(a)(1), and 846(b)(1)(A)(iii). The district court sentenced Sherman to 132 months imprisonment and sentenced Rawls to the statutory mandatory minimum of 120 months. *See* 21 U.S.C § 841(b). On appeal, both defendants challenge the sufficiency of the evidence to support their convictions. Alternatively, both challenge the sentences imposed by the district court. Both contend that their sentence is "substantively unreasonable" because the district court erroneously believed that it was bound by the statutory mandatory minimum. Sherman additionally contends the district court erred in calculating the quantity of cocaine base attributable to him for purposes of sentencing. Finally, in a separate *pro se* filing, Sherman contends the district court erred in admitting wiretap evidence against him. We presume the parties' familiarity with the

2

underlying facts, the procedural history, and the issues on appeal.

**I.      Sufficiency of the Evidence**

Both Sherman and Rawls argue that there was insufficient evidence to convict them of conspiring to distribute in excess of 50 grams of cocaine base.  The claims were properly preserved below and, accordingly, we review them *de novo*.  *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997).

A defendant challenging the sufficiency of the evidence to support his conviction "bears a heavy burden," *United States v. Mercado*, 573 F.3d 138, 140 (2d Cir. 2008) (internal quotations omitted), because we affirm where viewed "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements." *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 309 (2d Cir. 2009) (per curiam) (internal quotations omitted); *see generally Jackson v. Virginia*, 443 U.S. 307 (1979).  In reviewing such a challenge, "we must credit every inference that could have been drawn in the government's favor" and "defer to the jury's determination of the weight of the evidence and the credibility of witnesses, and to the jury's choice  of the competing inferences that can be drawn from the evidence." *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006) (internal citation and quotations omitted).  "'This standard of deference is especially important when reviewing a conviction of conspiracy.'" *Leslie*, 103 F.3d at 1100 (quoting *United States v. Taylor*, 92 F.3d 1313, 1333 (2d Cir. 1996)).

To establish the crime of conspiracy, the government needed to prove two elements at trial: (1) that the conspiracy alleged in the indictment existed, and (2) that the defendant knowingly joined or participated in it.  *Snow*, 462 F.3d at 68.  In this case, the government also needed to establish that it was reasonably foreseeable to the defendant that the conspiracy involved 50 grams or more of

3

cocaine base, or crack cocaine.

The government's evidence against Rawls and Sherman with respect to each element was overwhelming. At trial, the government offered the testimony of government agents and a cooperating witness as to the nature of the conspiracy; intercepted phone conversations in which both defendants discussed the drug distribution at the center of the conspiracy; and physical evidence including drugs and drug paraphernalia seized during Sherman's arrest and from an apartment shared by Rawls and another co-conspirator.

Specifically, with respect to Rawls, the government offered his post-arrest statements in which he admitted to "advis[ing]" co-conspirator Roshaun Hoggard "as to how to conduct his drug business" and to assisting Hoggard in converting cocaine powder into cocaine base. The government also offered intercepted cell phone conversations between Rawls and Hoggard in which the two discussed the drug activities at the center of the alleged conspiracy and the activities of other co-conspirators, and physical evidence such as scales bearing cocaine residue, plastic bags containing and razor blades bearing cocaine residue, and other drug-related paraphernalia seized from the common areas of an apartment Rawls shared with Hoggard.

With respect to Sherman, the government introduced a series of intercepted phone conversations in which he and Hoggard discussed pricing and supply of drugs as well as various sales to other individuals. The government also offered the testimony of Police Officer Katlin Flavin who observed two men later identified as Sherman and Hoggard arrive in New York City to meet with their supplier and then observed the two return to Connecticut. Flavin further testified that when officers attempted to pull over the vehicle and arrest Sherman, he fled on foot, hurling a plastic bag as he ran. As Flavin testified, Sherman was apprehended, and the bag, which contained roughly

4

260 grams of cocaine, was recovered and also offered as evidence at trial.

Neither Sherman nor Rawls disputes that the evidence was sufficient to establish that a drug conspiracy involving Hoggard and others existed. Both instead contend that the evidence was insufficient to establish their knowing participation in that drug conspiracy. The arguments are without merit. In light of the government's very substantial evidence of Rawls' and Sherman's knowing involvement in the conspiracy as set forth above and the deference we must pay to the jury's weighing of that evidence, we see no basis for disturbing the jury's verdicts. To the extent Rawls and Sherman raise additional arguments with respect to the sufficiency of the evidence, we have considered them and similarly reject them as meritless.

## II.    Sentencing

Following *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for "reasonableness." *United States v. Williams*, 524 F.3d 209, 214 (2d Cir. 2008). "Reasonableness review requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Johnson*, 567 F.3d 40, 51. (2d Cir. 2009).

### A.    The Mandatory Minimum

Rawls contends, in an argument joined by Sherman, that the district court erred in believing itself bound by the statutory mandatory minimum of 120 months and in failing to consider adequately whether such a sentence was "sufficient, but not greater than necessary," to advance the purposes of section 3553. *See* 18 U.S.C. § 3553(a). Both argue that as a result of *Booker* and its elimination of the mandatory guidelines, the minimum in section 841(b) must give way to the "parsimony clause" in 18 U.S.C. § 3553(a), and, accordingly, the district court erred in concluding

5

that it was required to impose, at minimum, a sentence of 120 months.

This Court has previously considered and rejected this very argument in the context of a mandatory minimum sentence imposed pursuant to section 841(b). *See United States v. Samas*, 561 F.3d 108, 110-11 (2d Cir. 2009). As we explained in *Samas*, section 3553(a) is not "inconsistent with a [congressionally prescribed] sentencing floor." *Id.* at 111; *see also Kimbrough v. United States*, 552 U.S. 85, 107 (2007) ("[S]entencing courts," although permitted by § 3553(a), after *Booker*, to deviate from an advisory-Guidelines-recommended range of imprisonment based on their policy disagreements with the Guidelines, "remain bound by the mandatory minimum sentences prescribed in the [statutes]."). Neither Rawls nor Sherman provides any basis for disturbing that finding, and because Rawls does not raise any other challenge to his sentence as imposed, we affirm his sentence as reasonable.

### B. Sherman's Attributable Drug Quantity

Sherman additionally challenges the procedural reasonableness of his sentence, arguing that the district court erred in calculating the quantity of drugs attributable to him for purposes of sentencing. *Cf. Johnson*, 567 F.3d at 51 ("Procedural error occurs when the district court . . . is mistaken in the Guidelines calculation" or "makes clearly erroneous factual findings"). Specifically, Sherman contends the district court erred in estimating that he had been involved in the conspiracy for at least three months – and should thus be responsible for certain drug quantities attributable to the conspiracy during that three-month period – because the court, by its own admission, "[did not] know on what date Sherman began . . . doing the things that support the conviction."[1]   Sentencing

---

[1] In a decision not challenged on appeal, the district court also determined that, for purposes of sentencing, it would only hold Sherman responsible for the drugs distributed by some members of the conspiracy and not others.

Tr. at 44.

"The quantity of drugs attributable to a defendant at the time of sentencing is a question of fact for the district court, subject to a clearly erroneous standard of review." *United States v. Hazut*, 140 F.3d 187, 190 (2d Cir. 1998). Accordingly, this Court will reverse only if it is "left with the definite and firm conviction that a mistake has been committed" in that calculation. *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir, 1996) (internal quotations omitted).

Where, as here, the drug quantity seized does "not reflect the true scale of the offense," both the Guidelines and the law of this Court specifically authorize sentencing courts to "approximate" the total quantity involved. *See* U.S.S.G. § 2D1.1 Application Note 12; *see also United States v. Jones*, 30 F.3d 276, 278 (2d Cir. 1994). In reaching an approximation, a sentencing court is not limited to the evidence adduced at trial but may instead "rely on any information it knows about," *Jones*, 30 F.3d at 278, and its approximation need only be supported by "a preponderance of the evidence," *United States v. Moore*, 54 F.3d 92, 102 (2d Cir. 1995).

Here, the district court approximated the quantity attributable to Sherman by (1) determining a total weekly quantity for the conspiracy, and (2) multiplying that quantity by the number of weeks Sherman had been a knowing participant in the conspiracy. Sherman does not challenge the district court's weekly quantity determination, only its conclusion that he had been involved in the conspiracy for approximately three months or 13 weeks. In reaching that admittedly estimated conclusion, the district court relied on: first, its finding that the wiretap evidence collected shortly before Sherman's arrest demonstrated that "Mr. Sherman was quite involved in" the criminal activity and spoke with co-conspirators in a manner suggesting that they were "clearly well acquainted" and "clearly had prior dealings with each other on exactly the same substance, that's

7

distribution of drugs." Sentencing Tr. at 42-43. Second, the court noted that Sherman had, by his own admission, suffered a personal tragedy approximately four months before his arrest which had caused him to return to significant daily drug use. Third, it noted that Sherman had been unemployed for over a year and thus had no means to support that daily habit. Accordingly, the court concluded that Sherman's involvement in the conspiracy likely followed closely on the heels of his return to daily drug use and thus began approximately three months prior to his arrest. *Id.* at 43-44.

We detect no error, clear or otherwise, in the district court's approximation which was based on "specific evidence" available to it at sentencing, not simply its own "surmise [or] conjecture." *United States v. Shonubi*, 998 F.2d 84, 89-90 (2d Cir. 1993). That the district court could not identify a precise starting date for Sherman's involvement in the conspiracy is itself insufficient to leave us with the sort of "definite and firm conviction that a mistake has been committed" necessary to warrant reversal. *Cf. United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) ("[A] conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel."). Indeed, as the district court noted, and the record amply supports, its ultimate quantity calculation was "quite conservative" given the evidence adduced at trial respecting the magnitude of the drugs involved.

Accordingly, we affirm Sherman's sentence as reasonable.

**III.  The Wiretap Evidence**

In a separate *pro se* filing, Sherman alone challenges the district court's denial of his counseled motion to suppress the wiretap evidence obtained with respect to him. Sherman contends here, as he did below, that the affidavit submitted by the government to obtain the wiretap in

question failed to meet the statutory requirements imposed by 18 U.S.C. § 2518.

We review *de novo* a district court's denial of a motion to suppress wiretap evidence. *United States v. Smith*, 9 F.3d 1007, 1011 (2d Cir. 1993). However, in reviewing the issuance of the wiretap order itself, "[t]he role of an appeals court . . . is not to make a de novo determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990) (internal quotations omitted).

Having reviewed the government's application for the wiretap in question, we reject Sherman's claims for substantially the same reasons set forth by the district court in denying the suppression motion below.

**IV.    Conclusion**

Accordingly, for the foregoing reasons, the judgments of conviction and sentences imposed by the district court are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk